UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EXCEL CONTRACTORS, LLC             CIVIL ACTION NO.

VERSUS             19-CV-580-SDD-SDJ

APTIM MAINTENANCE, LLC

**RULING**

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by Plaintiff, Excel Contractors, LLC ("Excel"). Defendant APTIM Maintenance, LLC ("APTIM") has filed an *Opposition*[2] to this *Motion*, to which Excel filed a *Reply*.[3] For the following reasons, the Court finds that Excel's *Motion* must be denied.

**I.    FACTUAL BACKGROUND**

This case arises from a dispute between a general contractor and subcontractor. Juniper Specialty Products, LLC ("Juniper") engaged APTIM, the general contractor, to work on a Juniper's facility in Westlake, Louisiana.[4] APTIM in turn contracted with subcontractors, including Excel.[5] Excel provided electrical and instrumentation services for the project.[6] APTIM and Excel executed the Subcontract at issue in this case in March of 2018.[7] Work commenced, and continued for a time, until Juniper abruptly locked the parties out of the construction site on May 21, 2019.[8] Juniper informed APTIM that it was

---

[1] Rec. Doc. No. 17.
[2] Rec. Doc. No. 18.
[3] Rec. Doc. No. 19.
[4] Rec. Doc. No. 18-1, p. 1.
[5] Rec. Doc. No. 17-1, pp. 1–2; Rec. Doc. No. 18-1, p. 2.
[6] Rec. Doc. No. 17-1, p. 1; Rec. Doc. No. 18-1, p. 2.
[7] Rec. Doc. No. 17-1, pp. 1–2; Rec. Doc. No. 18-1, p. 2.
[8] Rec. Doc. No. 17-1, p. 2; Rec. Doc. 18-1, p. 2.

stopping construction because it could not pay APTIM's invoices.[9] Juniper is seeking bankruptcy protection and has not paid APTIM.[10] APTIM has not paid Excel, and Excel would like to be paid, so Excel brought this suit against APTIM.[11]

## II.    THE PARTIES' ARGUMENTS

The Subcontract forms the basis for this dispute; the parties agree that their respective rights and responsibilities are governed by the Subcontract. Most relevant to this dispute is Article 45 which governs a "Termination for Convenience."

Several sections of Article 45 are germane, but the gravamen of this dispute is the interpretation of § 45.6, which provides:

> In the event of Client termination, Company's liability to Subcontractor shall be limited to the extent of Company's recovery on Subcontractor's behalf, except as otherwise provided in this Subcontract. Company agrees to cooperate with Subcontractor, at Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of the Client termination and to permit Subcontractor to prosecute the claim, in the name of the Company for the use and benefit of Subcontractor, or assign the claim to Subcontractor.[12]

Excel argues that § 45.6 can only be interpreted to mean that Excel can recover payment for the work it performed under the Subcontract ("the Subcontract Price") from APTIM regardless of whether APTIM recovers payment from Juniper. APTIM counters that a literal application of the first sentence of § 45.6 provides that APTIM has no liability to Excel beyond what APTIM recovers from Juniper.

---

[9] Rec. Doc. No. 17-1, pp. 1–2; Rec. Doc. No. 18-1, p. 2.
[10] Rec. Doc. No. 17-1, p. 4; Rec. Doc. No. 18-1, pp. 4–6; Rec. Doc. No. 10, pp. 1-2.
[11] Rec. Doc. No. 17-1, p. 3; Rec. Doc. No. 18-1, p. 2.
[12] Rec. Doc. No. 17-3, p. 48. APTIM is the "Company"; Excel is the "Subcontractor"; and Juniper is the "Client." *Id.* at 2.

Excel posits that APTIM's interpretation would make § 45.6 function as a suspensive condition[13] and argues that the Louisiana Supreme Court has held that "'contractual provisions are construed as not to be suspensive conditions whenever possible.'"[14] Excel argues that § 45.6 is ambiguous, and the Court should find against a suspensive condition and hold that APTIM must pay Excel for its services rendered—regardless of whether Juniper pays APTIM.[15] Excel presses that even if § 45.6 is an enforceable suspensive condition, it only suspends the payment of "claim[s] arising out of [Juniper's] termination," which should not include payment for services rendered under the Subcontract.[16]

### III. LAW AND ANALYSIS

#### A. Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[17] This determination is made "in the light most favorable to the opposing party."[18] A party moving for summary judgment "'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[19] If the moving party satisfies its burden, "the non-moving party must

---

[13] A suspensive condition prevents the existence of an obligation until the uncertain event occurs. La. Civ. Code art. 1766.
[14] Rec. Doc. No. 17-28, p. 9 (quoting *S. States Masonry, Inc. v. J.A. Jones Const. Co.*, 507 So. 2d 198, 201 (La. 1987).
[15] *Id.*
[16] *Id.* at pp. 12–17.
[17] FED. R. CIV. P. 56(a).
[18] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).
[19] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[20] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[21]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[22] All reasonable factual inferences are drawn in favor of the nonmoving party.[23] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[24] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiffs [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"[25]

### B. Section 45.6 is neither a Suspensive Condition nor a Term for Performance

Excel argues that § 45.6 should not be interpreted as a pay-if-paid clause (suspensive condition) because those are disfavored in the absence of express

---

[20] *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[21] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
[22] *Pylant v. Hartford Life and Accident Insurance Company,* 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[23] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[24] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[25] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

conditional language.[26] Instead, Excel argues, § 45.6 is merely a term for performance, which requires performance in a reasonable time if the length of the term is uncertain, as here.[27]

Excel points to § 3.4.2 which provides: "[APTIM] shall pay the amount referred to in the Payment Certificate within thirty (30) [d]ays of receipt of the invoice relevant to the Payment Certificate." Given that § 3.4.2 creates an obligation and § 45.6 as interpreted would suspend that obligation, Excel argues that § 45.6 purports to be suspensive condition; and, § 45.6 does not contain the required language to effect a suspensive condition.

The parties' reliance on the suspensive condition vs. term for performance dichotomy[28] is misplaced. Excel relies heavily on *Southern States Masonry, Inc. v. J.A. Jones Const. Co.*[29] for its insolvency and suspensive condition arguments. In that case, the Louisiana Supreme Court interpreted two payment provisions in subcontracts.[30] Excel relies on the court's holding that where the parties presumed that the owner would pay the general contractor, and there was no indication that the parties had considered the possibility of the owner's insolvency, the payment clauses were not suspensive conditions.[31]

An examination of the clauses at issue in *Southern States* shows its limited applicability to the instant case. One of the clauses provided: "[c]ontractor shall pay to

---

[26] Rec. Doc. No. 17-28, p. 9 (quoting *S. States Masonry, Inc. v. J.A. Jones Const. Co.*, 507 So. 2d 198, 201 (La. 1987).
[27] Rec. Doc. No. 19, p. 3.
[28] A valid "pay-if-paid" clause functions as a suspensive condition. A "pay-when-paid" clause, on the other hand, creates a term for payment which must be performed within a reasonable time.
[29] 507 So. 2d 198 (1987).
[30] There were two consolidated cases. *Id.* at 201.
[31] *Id.* at 201.

Subcontractor, upon receipt of payment from the Owner. . . ."[32] The other provided: "[c]ontractor agrees that he will pay to said Sub-contractor [the contract price], said amount to be paid as follows: ninety per cent (90%) of the value of the work completed and accepted each month for which payment has been made by said Owner to said Contractor . . . .[33]

Section 45.6 is fundamentally different.[34] The clauses at issue in *Southern States* described when/if payment would take place—they were part and parcel of the payment provision. In this case, the clause at issue is not a payment provision. It is a contingency plan in the event of the owner's (Juniper's) termination, which is an event that *limits* APTIM's obligation to pay "to the extent of [APTIM'S] recovery" from Juniper.

In *Southern States* the court wrestled with classifying the provisions as terms or conditions.[35] If a contractual provision creates a suspensive condition then the obligation does not exist until the specified condition occurs.[36] On the other hand, if a contractual provision stipulates the terms for payment, then, at most, the provision may trigger a delay in the time for payment, but the law imposes an obligation to make payment within a "reasonable time."[37] The court interpreted then-article 2049 of the Louisiana Civil Code, which provided that a term (in contrast to a condition) may consist of a determinate lapse

---

[32] *Id.* at 200.
[33] *Id.* at 201. The clause continued: "final payment will be made by said Contractor to said Sub-contractor immediately following final completion and acceptance of such materials and work by the Architect, and final payment received by said Contractor. …." *Id.*
[34] As interpreted below, § 45.6 has the same effect at this time that a suspensive condition would. That does not mean, however, that it is a suspensive condition.
[35] *Id.* at 203–207.
[36] *Id.* at 203–206.
[37] *Id.*

of time or an event which was reasonably certain to occur.[38] The court observed that the owner's payment to the general contractor was "viewed as a reasonably certain event" and that the payment was "only uncertain to the extent that all human events are uncertain."[39] The court held that:

> [T]he payment clauses constituted terms relating to the time of payment which served to retard or delay the general contractor's payment until the occurrence of an event (owner's payment to contractor), contemplated surely to take place in the anticipated normal course of events. The unanticipated failure to pay on the part of the owner changed the fundamental premise on which the parties were relying. That unanticipated occurrence thereupon made the time for performing the payment obligation unascertainable, or uncertain, requiring the obligation to be performed within a reasonable time.[40]

The parties in this case did not expect that Juniper would cancel the project. Juniper's cancellation was not a "fundamental premise on which the parties were relying."[41] Section 45.6 cannot be characterized as creating a term relating to the time of payment because it concerns something unexpected. Rather, § 45.6 limits payment. Section 45.6 is simply a risk sharing provision; a contingency plan in case things go awry.

APTIM's argument that § 45.6 creates a suspensive condition is incorrect as well. "A conditional obligation is one dependent on an uncertain event."[42] When there is a suspensive condition, the obligation itself does not exist.[43] Here, APTIM is obligated to pay under § 3.4.2 (and other provisions) but § 45.6 limits APTIM's payment obligation to the extent of APTIM's recovery. Section 45.6 does not create a suspensive condition or

---

[38] *Id.* at 203 citing La. Civ. Code art. 2. Then-article 2049 has been subsumed into current article 1777 which lacks the "in the course of nature" language but does not change the law. La. Civ. Code. art. 1777 cmt. (a). See also *Burgess v. Shi Gang Zheng*, 2017-0665 (La. App. 4 Cir. 10/10/18), 257 So. 3d 764, 772.
[39] *Southern States,* 507 So.2d at 203–04.
[40] *Id.* at 204.
[41] *Id.*
[42] La. Civ. Code art. 1767.
[43] *Southern States*, 507 So.2d at 203–04.

a term for performance; the Court will interpret § 45.6 based on its plain and unambiguous meaning.

### C. Interpretation of the Subcontract

The goal of contract interpretation is to determine the objective common intent of the parties.[44] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[45] Contracts should be interpreted to give effect to each provision.[46] "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[47] Specific provisions control over general.[48]

A plain reading of Article 45 of the Subcontract resolves this *Motion*.[49] Section 45.4 provides: "[t]he payment of compensation provided for in this Article 46 [sic][50] shall be [APTIM's] sole and exclusive obligation, and [Excel's] sole and exclusive remedy, in the event of any termination under this Article 46 [sic]."[51] Section 45.4 thus provides that when a termination under Article 45 occurs, Article 45's rules for payment control—not other provisions of the Subcontract.

Excel argues that §§ 45.1–45.1.1 create an "affirmative payment obligation" on the part of APTIM because § 45.1 provides that APTIM "'shall pay to [Excel] . . . the following

---

[44] La. Civ. Code art. 2045, cmt (b).
[45] La. Civ. Code art. 2046; See *Maloney v. Oak Builders, Inc.*, 235 So.2d 386 (1970).
[46] La. Civ. Code art. 2049.
[47] La. Civ. Code art. 2050.
[48] *Mixon v. St. Paul Fire & Marine Ins. Co. of St. Paul, Minn.*, 147 La. 302, 306, 84 So. 790, 791 (1920); *Master Craft Constr., LLC v. Pronoun, Inc.*, 2017-569 (La. App. 3 Cir. 12/20/17), 258 So. 3d 802, 807.
[49] See Rec. Doc. No. 17-3.
[50] The parties agree that Article 45's references to "this Article 46" are typos meant to read "this Article 45."
[51] Rec. Doc. No. 17-3, p. 48.

63438                                                                                                            8

amounts which shall not . . . exceed the Subcontract Price.'"[52] This argument is without merit. Excel omits the preceding language; § 45.1 provides "[s]hould [APTIM] terminate the Subcontract for [APTIM's] convenience under this Section 46.1 [sic] . . . ."[53] The "affirmative payment obligation" is thus premised on APTIM terminating under § 45.1. It is undisputed that the termination in this case was under § 45.6, the only provision dealing with a Juniper termination. An unstrained reading of the Subcontract requires the conclusion that the affirmative payment obligation in § 45.1 does not apply to terminations under § 45.6.[54]

> The full text of § 45.6 provides:
>
> In the event of Client termination, Company's liability to Subcontractor shall be limited to the extent of Company's recovery on Subcontractor's behalf, except as otherwise provided in this Subcontract.[55] Company agrees to cooperate with Subcontractor, at Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of the Client termination and to permit Subcontractor to prosecute the claim, in the name of the Company for the use and benefit of Subcontractor, or assign the claim to Subcontractor.[56]

Excel argues that § 45.6 should be read in conjunction with § 45.3 to understand the meaning of "liability" in § 45.6.[57] Section 45.3 eliminates APTIM's liability for several types of losses associated with a termination.[58] According to Excel, since § 45.3 limits APTIM's liability for losses associated with a Juniper termination, the "liability" described

---

[52] Rec. Doc. No. 17-28, pp. 13–14.
[53] Rec. Doc. No. 17-3, p. 47.
[54] *Mixon v. St. Paul Fire & Marine Ins. Co. of St. Paul, Minn.*, 147 La. 302, 306, 84 So. 790, 791 (1920) (stating that specific provisions control over general when interpreting a contract); *Master Craft Constr., LLC v. Pronoun, Inc.*, 2017-569 (La. App. 3 Cir. 12/20/17), 258 So. 3d 802, 807.
[55] The "except as otherwise provided" language does not condition § 45.6 on other payment provisions such as § 3.4.2. That construction would eviscerate § 45.6 because any provision on payment would override § 45.6. The better reading is to cabin the applicability of the "except as otherwise provided" language to provisions dealing with a Juniper termination.
[56] Rec. Doc. No. 17-3, p. 48.
[57] Rec. Doc. No. 17-28, p. 14.
[58] Rec. Doc. No. 17-3, p. 48.

in § 45.6 must be liability for something else, such as the Subcontract Price.[59] The Court agrees.

Excel maintains that if § 45.6 suspends or limits the obligation to pay, it only suspends the payment of "claim[s] arising out of [Juniper's] termination," which, according to Excel, do not include the Subcontract Price.[60] Excel argues that the second sentence of § 45.6 provides that termination-specific losses must be recovered directly from Juniper, and Excel's claim is for the Subcontract Price—not termination-specific losses.[61]

Excel's interpretation of § 45.6 is afflicted with a fatal inconsistency. Excel cannot be correct that: the liability contemplated in the first sentence of § 45.6 is the Subcontract Price;[62] the Subcontract Price is not a claim arising out of the termination;[63] and, the "[t]he scope and breadth of § 45.6 is constrained to 'claims' which are 'arising out of the Client termination.'"[64] The statements are mutually exclusive.

The scope and breadth of § 45.6 is not constrained to claims arising out of Juniper's termination. As Excel argues, § 45.3 relieves APTIM of liability for any claims arising out of termination.[65] The second sentence of § 45.6 gives Excel an avenue to vindicate those claims. Since § 45.3 relieves APTIM of claims arising out of a termination, the liability contemplated in the first sentence of § 45.6 must be for something else—the Subcontract Price. As such, reading § 45.6 to only govern claims arising out of a Juniper termination is inconsistent with § 45.3 and renders the first sentence of § 45.6

---

[59] Rec. Doc. No. 17-28, p. 14.
[60] Rec. Doc. No. 17-28, pp. 13–16.
[61] *Id.* at p. 12.
[62] "Excel respectfully represents that the balance of this 'liability' is the payment of the 'Subcontract Price' which APTIM affirmatively bound itself to pay in § 45.1.1." *Id.* at 14.
[63] "Excel earned payment of these time and materials expenses prior to the termination, and, as such, Excel's claim does not arise from it." *Id.* at p. 15.
[64] *Id.* at p. 16.
[65] *Id.* at p. 14.

meaningless. Rather, the better approach is to interpret the first sentence as written—it limits APTIM's liability to Excel until APTIM recovers from Juniper. As such, based on the plain meaning of the unambiguous text, APTIM is not liable to Excel for the Subcontract Price until APTIM recovers from Juniper.

Excel also argues that assumption of the risk of insolvency must be in clear and express terms.[66] Excel points to the title of Article 45, "Termination for Convenience," in support of its argument that the parties did not intend for § 45.6 to cover issues of owner insolvency.[67] APTIM responds that the absence of the term "owner insolvency" in § 45.6 is irrelevant because the provision is broad enough to encompass the insolvency of an owner.[68] In other words, § 45.6 is broad enough to pass the risk of *any* owner termination on to Excel.

The breadth of § 45.6 cannot be ignored. It applies "[i]n the event of [Juniper] termination . . ."; there is no qualifying or limiting language, and the language is "clear and explicit."[69] Excel therefore assumed the risk that the limitation of liability would come into play for any reason Juniper might terminate, including insolvency. Excel's *Motion* is denied insofar as it requests payment of the Subcontract Price.

Excel also moves for summary judgment in favor of a finding that APTIM owes Excel for Excel's cost of demobilization from the work site. Excel argues that there is no termination-specific demobilization provision; and, as such, Excel's responsibility to demobilize flows from the Subcontract.[70] Because the responsibility flows from the

---

[66] Rec. Doc. 17-28, pp. 11–12 (quoting *Tymeless Flooring, Inc. v. Rotolo Consultants, Inc.*, (La. App. 4 Cir. 5/20/15), 172 So. 3d 145, 151–52.
[67] Rec. Doc. No. 17-28, p. 10.
[68] Rec. Doc. No. 18, p. 10.
[69] La. Civ. Code art. 2046; See *Maloney v. Oak Builders, Inc.*, 235 So.2d 386 (1970).
[70] Rec. Doc. No. 17-28, p. 23.

Subcontract, Excel argues, the demobilization claims are not claims "arising out of the [Juniper] termination" in the language of § 45.6.[71] As such, APTIM—not Juniper—is liable for the demobilization expenses.[72] APTIM argues that its liability is limited under §45.4[73] and §45.6.[74]

Excel's argument fails. The Court has already concluded that the scope of the limitation of liability in § 45.6 embraces all of Excel's potential claims against APTIM. Even if the demobilization expenses are not claims "arising out of the [Juniper] termination" and APTIM is liable to Excel for them, that liability is limited to APTIM's recovery from Juniper, which apparently has not occurred.[75] As such, Excel's *Motion* is denied insofar as it requests summary judgment as to the demobilization expenses.

Excel argues it is entitled to attorney's fees because this suit is on an open account under Louisiana Revised Statute 9:2781.[76] APTIM counters that the Excel cannot recover under La. R.S. 9:2781 because Excel's demand does not correctly set forth the amount owed.[77]

Excel's claim for attorney's fees fails as a matter of law. Even assuming APTIM's liability to Excel is an "open account" within the meaning of La. R.S. 9:2781, an award of attorney's fees under the statute is not mandatory until "judgment on the claim is rendered

---

[71] *Id.*
[72] *Id.*
[73] Section 45.4 provides "[t]he payment of compensation provided for in this Article 46 [sic] shall be [APTIM's] sole and exclusive obligation, and [Excel's] sole and exclusive remedy, in the event of any termination under this Article 46 [sic]." Rec. Doc. No. 17-3, p. 48
[74] Rec. Doc. 18, p. 19.
[75] On the other hand, even if the demobilization expenses are claims "arising out of the [Juniper] termination," then § 45.3 and § 45.6 require Excel to seek recovery from Juniper.
[76] Rec. Doc. No. 17-28, p. 24.
[77] Rec. Doc. No. 18, p. 17.

in favor of the claimant."[78] The Court has not rendered judgment in favor of Excel, so La. R.S. 9:2781 is inapplicable. Excel's *Motion* is denied as to its request for attorney's fees.

## IV. CONCLUSION

APTIM asks the Court to grant summary judgment in favor of APTIM under Fed. R. Civ. P. 56(f)(1).[79] The Court declines to do so. Rule 56(f) requires that the Court "giv[e] notice and reasonable time to respond" before entering a judgment independent of the motion. If APTIM wishes to move for summary judgment, it may file a motion to that effect.

For the reasons set forth above, Excel's *Motion for Summary Judgment*[80] is **DENIED**.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on January 4, 2021.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[78] La. R.S. 9:2781(A).
[79] Rec. Doc. No. 18, p. 10.
[80] Rec. Doc. No. 17.